831 A.2d 1060

**Jeremiah BENEDICT**

v.

**STATE of Maryland.**

**No. 111, Sept. Term, 2002.**

Court of Appeals of Maryland.

Sept. 8, 2003.

Julia Doyle Bernhardt, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Steven L. Holcomb, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for respondent.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA, JJ.

WILNER, J.

We granted *certiorari* to determine whether, when a court (1) imposes a sentence of imprisonment on a defendant, (2) suspends execution of all but a designated part of that sentence in favor of probation, and (3) later revokes the probation, the court may direct execution of anything more than the previously suspended part of the sentence. In this case, the Circuit Court for Washington County purported to do so,

although it is not entirely clear whether, in fact, it did so. Whatever its intent, we shall conclude that its authority was limited to the previously suspended part of the sentence and shall remand the case for issuance of a new judgment in conformance with the pronouncements in this Opinion.

## BACKGROUND

On November 2, 1998, appellant was convicted, on guilty pleas, of second degree assault and malicious destruction of property. He was sentenced on the assault charge to ten years imprisonment, with all but 18 months suspended. For the malicious destruction of property, he was sentenced to prison for three years, with all but 18 months suspended. In both instances, appellant was to be on unsupervised probation for three years following his release. The two sentences were directed to run concurrently with each other.

The 18–month confinement period would have expired on May 2, 2000. Appellant was released on mandatory supervision, however, on August 9, 1999. That was because, according to the Division of Correction, he had accumulated a total of 267 days of diminution credits—180 days of good conduct credits (10 days/month deducted in advance from the 18 month unsuspended portion of his sentence), 35 days of earned industrial credits, and 52 days of earned special project credits. According to our calculation, appellant served 280 days in prison.

On August 29, 1999—20 days after his release—appellant senselessly battered a 19–year old man, rendering him unconscious for at least three days. Appellant was arrested on September 1 and charged with first and second degree assault and reckless endangerment. He was tried by a jury, convicted of second degree assault and reckless endangerment (the latter being merged into the former), and sentenced to ten years in prison.

Appellant's arrest resulted in a warrant charging him with a violation of the probation ordered under the 1998 sentences. Proceedings on that warrant were apparently stayed pending

**4**

resolution of the new criminal case. He appeared before the court, with counsel, on August 29, 2000, and admitted to the violation. The court terminated the probation and directed, as to the assault conviction, that appellant "be committed to the Division of Correction for a period of 10 years. You have credit for time served, and this sentence will be consecutive to any sentence you're now serving." With respect to the malicious destruction conviction, the court said "three years Division of Correction, concurrent with [the sentence for assault] but consecutive to any sentences you're now serving." The docket entry in the assault case recorded the disposition as "SENTENCE: TEN (10) YEARS Division of Correction; *Credit for time served 140 days*," the sentence "to run Consecutive to any sentence now serving or obligated to serve." (Emphasis added). The docket entry in the malicious destruction case was similar: "SENTENCE: THREE (3) YEARS Division of Correction; *Credit for time served 140 days*." (Emphasis added). How the clerk arrived at the number 140 is unclear.[1] The court made no statement quantifying the number of days of credit. The transcript of the probation violation hearing shows only that the court pronounced the sentence as 10 years and that appellant would "have credit for time served."

Unhappy with the decision to run the execution of the 1998 sentences consecutive to the sentence imposed in 1999, appellant filed a motion with the sentencing judge to modify it and

---

1. The record contains two "Authority for Issuing Jail Credit" forms prepared by the Washington County Detention Center. They each indicate that appellant served time in that local detention center, for which he was entitled to credit. The form pertaining to the assault case showed that he served 36 days in May and June, 1998 and 43 days in October and November, 1999. The form pertaining to the malicious destruction case shows that he served 97 days from May to August, 1998, and 43 days in October and November, 1999. The time allocated to the malicious destruction case totals 140 days. As noted, however, all of that time was served in the county detention center, either before the November, 1998 sentences were imposed, or after appellant was released in August, 1999, and does not take into account the 280 days appellant served in the Division of Correction under the November, 1998 sentences. We do not address in this appeal whether appellant is entitled to the 140 days.

a motion to have a three-judge panel review it. The motion to modify was denied on September 14, 2000; the motion for review was considered and, on October 12, 2000, the review panel declined to disturb the sentences. Neither order said anything about the number of days of credit to which appellant was entitled, because no issue was raised with respect to it. In the order denying review, the panel described the effective sentences as ten years and three years, respectively, with "credit for time served."

In February, 2001, appellant filed a *pro se* petition for post-conviction relief, claiming that the sentences were illegal. The basis of the petition was that, as the sentences were imposed in 1998, they could not be made consecutive to the sentence imposed in 1999. After obtaining counsel, that petition was voluntarily withdrawn. In May, 2001, appellant filed another *pro se* petition for post conviction relief raising the same issue. While that petition was pending, appellant filed a motion to correct an illegal sentence, reiterating his complaint about the 1998 sentence being made consecutive to the 1999 sentence and complaining as well that, by directing execution of more than the previously suspended part of the sentences, the court effectively had increased those sentences. On August 15, 2002, the court denied all relief, concluding that (1) it had the authority to "reimpose the original sentence, 10 years and 3 years, concurrent, *with credit for time served and credits earned while in the Division of Correction before release on parole or probation*" (emphasis added), and (2) it had the authority "to impose sentences to run consecutive to any new sentence being served, and is not required to run the VOP [violation of probation] sentences concurrent to any sentence received as a result of a subsequent conviction."

This appeal is from that order. Appellant no longer complains about the court's having made the sentences consecutive to the 1999 sentence, but limits his complaint to its having directed execution of anything more than the previously suspended part of the sentences, *i.e.*, eight-and-a-half years of the sentence for assault and one-and-a-half years of the sentence for malicious destruction of property. He contends that, if a

court imposes a "split sentence" and later revokes probation, it imposes an illegal sentence "when it imposes the entire sentence of imprisonment, both suspended and unsuspended portions, with credit for time served, instead of directing execution of only that part of the sentence which it had previously suspended."

## DISCUSSION

We noted initially some uncertainty as to the substance of the court's disposition. In its August, 2000 ruling, the court clearly directed execution of the entire ten year sentence, less a credit only for "time served" which, despite the docket entry, would have to include the 280 days he served in a Division of Correction facility. The review panel construed the ruling in that manner. In its August, 2002 order denying appellant's motion to correct illegal sentence, however, the court indicated that it had the authority to reimpose the sentence of ten years "with credit for time served *and credits earned while in the Division of Correction before release on parole or probation.*" (Emphasis added). Whether the court intended that statement literally, as simply an expression of its authority, or whether it meant the statement to define its actual disposition is unclear. If the statement was intended to define the actual disposition, appellant would have received all that he sought and all to which he is entitled, as the credit against the ten years would have included the entire 18 months that was initially unsuspended—the 280 days that he actually served in prison and the 267 days of diminution credits that led to his release on mandatory supervision.

Ordinarily, when faced with such an ambiguity, we would remand the case for clarification. In this instance, however, clarification alone might be inadequate, for we believe that the court may not direct execution of any part of the 18 month period. Its authority is limited to the previously suspended period of eight-and-a-half years.

At issue here is the proper interplay between three related statutes which, notwithstanding some apparent facial inconsis-

tency, can be read together to create a clear and harmonious allocation of authority between the court and the Maryland Parole Commission. Because we believe that the Legislature intended such a harmonious reading of its handiwork, we shall read the statutes in that manner. *See Whiting–Turner v. Fitzpatrick,* 366 Md. 295, 302–03, 783 A.2d 667, 671 (2001) ("statutes on the same subject are to be read together and harmonized to the extent possible" so as to avoid rendering any of them or any portions of them superfluous); *Cooper v. Sacco,* 357 Md. 622, 745 A.2d 1074 (2000); *GEICO v. Ins. Comm'r,* 332 Md. 124, 630 A.2d 713 (1993).

As a prelude, when the court initially imposed the ten and three-year sentences in November,1998, and when it revoked the probation in August, 2000, it acted under then-Md. Code, Art. 27, § 641A. The provisions of that section now appear in §§ 6–219 through 6–224 of the Criminal Procedure Article, adopted as part of the general code revision process in 2001. In *Moats v. Scott,* 358 Md. 593, 595, 751 A.2d 462, 463 (2000), we explained the various options available to a court under § 641A (and that remain available under the new Criminal Procedure Article) upon convicting a defendant of a crime that carries a penalty of incarceration. Paraphrasing what we said there:

(1) The court may impose a prison sentence up to the maximum term allowed and, by stating no contrary ruling, direct that the entire sentence be executed. If that approach is chosen, subject to an earlier release on parole or, through the accumulation of statutory diminution credits, on mandatory supervision, the defendant will serve the entire sentence in prison.

(2) The court may suspend *imposition* of sentence and place the defendant on probation. If it chooses that approach, which courts rarely do, no sentence has been imposed. If the defendant violates the probation, the court may revoke it and, at that time, impose a sentence up to the maximum term allowed and decide how much of it should be executed.

(3) The court may impose sentence up to the maximum term allowed and suspend *execution* of all of it in favor of probation. In that setting, the full sentence has been imposed but, subject to the probation, the court has excused the defendant from serving any part of it in prison. If the defendant violates the probation, the court may revoke it and, at that time, direct execution of all or any part of the sentence. The court does not, at that time, either impose or reimpose the sentence. The sentence has already been imposed. All that is at issue is how much of the sentence previously imposed the defendant must now serve in prison by reason of the violation of probation.

(4) The court may impose sentence up to the maximum term allowed and provide that only part of it be served in prison. Known as the "split sentence," this is a more common approach than the ones described in ¶¶ (2) and (3). The court achieves this result by suspending execution of all but a specified part of the sentence in favor of probation. As with the suspension under ¶ (3), the full sentence has been imposed, but, subject to the probation, the court has excused the defendant from serving all but the designated part in prison. If the defendant violates the probation, the court may revoke it. As is the case under ¶ (3), the court does not then impose or reimpose the sentence, which has already been imposed, but merely determines how much of the unserved part of the sentence the defendant must serve in prison.

(5) Finally, in four counties—Calvert, Charles, Prince George's, and St. Mary's—the court may impose incarceration as a condition of probation. As we explained in *Moats, supra,* 358 Md. at 595, 751 A.2d at 463, that approach is somewhat like the "split sentence" and "normally involves either a short incarceration in a local detention center or some form of home detention as part of a longer period of probation."

We are dealing here with the "split sentence" described in ¶ (4). The court imposed an effective sentence of ten years in prison but suspended execution of all but 18 months of that sentence in favor of probation. But for the application of

various kinds of diminution credits or the prospect of parole, appellant would have served the entire 18 months and then commenced his period of probation. Had he thereafter violated his probation, the court could have revoked it and directed execution of the remaining part of the previously imposed sentence which, in that setting, would have been eight years and six months.[2] The court could not have required appellant to re-serve any part of the 18 months previously served; any such order would have violated not only the State and Federal prohibition against double jeopardy but § 6–218(b)(1) of the Criminal Procedure Article as well. What complicates this simple setting and produces the issue now before us is the fact that few defendants ever serve in prison the full amount of time for which they have been committed. That is because they accrue diminution credits allowed by statute or they are paroled, or both.

In *Secretary, Dept. of Public Safety, Correctional Services v. Henderson*, 351 Md. 438, 440–41, 718 A.2d 1150, 1151 (1998), we observed that, by statute, inmates in the State correctional system are eligible to earn four kinds of credits against their sentences—credits for good conduct, for performing work tasks assigned to them, for satisfactory progress in vocational or other educational courses, and for special work projects, each set at, or up to, a certain number of days per month. Inmates who accumulate such credits, as most do, will be released from prison prior to the date called for by the court's sentence. The prisoner is released on what the law calls "mandatory supervision." In that status, prisoners "remain in legal custody until expiration of their full term and are subject to all laws, regulations, and conditions applicable to parolees," and, "[i]f they violate the conditions of their mandatory supervision, they may be returned to prison to complete their sentence." *Id.* at 441, 718 A.2d at 1152.

---

**2.** For purposes of this case, the three-year sentence for malicious destruction of property is irrelevant. The legal and factual issues are the same for both sentences, and appellant's fate really rides on the ten-year sentence.

As we indicated, because of his accumulation of various diminution credits, appellant served only 280 days of the 18 months that the court directed be served in prison. He was released 267 days before the 18–month period expired. It is clear to us, notwithstanding the erroneous docket entry, that appellant was intended to be given credit for at least the 280 days that he actually served in prison. The question is whether, upon revocation of his probation, the court may direct that he serve in prison the 267 days that he did not so serve.

The answer, as we said, lies in harmonizing separate statutes that come into play in situations such as the one before us, where a defendant's wrongful conduct following release from prison on mandatory supervision triggers revocation of both the release on mandatory supervision and the probation, the former administered by the Parole Commission, the latter by the court. Criminal Procedure Article § 6–224(b), which was derived without substantive change from former Art. 27, § 642, provides that, when a court exercising criminal jurisdiction places a defendant on probation for a definite time and later finds that the defendant has violated the probation, the court may, among other options, "sentence the defendant to [ ] *all* or any part of the period of imprisonment imposed in the original sentence." (Emphasis added).

Although, for the reasons explained earlier, the statute is incorrect in speaking of "sentenc[ing]" the defendant at the time the court revokes the probation, it seems, on its face, to be clear and unambiguous with respect to the issue raised by appellant. The court may direct execution of "all or any part" of the period of imprisonment imposed in the original sentence. The period of imprisonment imposed on appellant in November, 1998, was ten years. Thus, if we were to look just to § 642 and its current emanation, § 6–224(b), we would have to conclude that "all or any part" means what it says and that the court may, upon revoking probation, direct execution of the entire ten-year sentence.

Section 642 (and current § 6–224(b)) cannot be read in isolation, however. Notwithstanding their otherwise unconditional language, §§ 642 and 6–224(b) clearly must yield to § 6–218(b), which mandates that credit be given for time already served in prison, for to conclude otherwise would not only render § 6–218 nugatory in that context but would permit the court actually to increase the sentence by requiring a defendant to serve time already served, which is certainly not allowed. This, alone, illustrates that the seemingly unconditional language of §§ 642 and 6–224(b) cannot be taken entirely at face value.

More to the point of this case, that language must yield as well to § 7–504(b) of the Correctional Services Article (former Art. 41, § 4–612(e)). That section vests in the Parole Commission the decision whether to revoke diminution credits earned while the defendant was in prison and that accounted for his/her release on mandatory supervision. It states that "[t]he commissioner presiding at an individual's mandatory supervision revocation hearing may revoke any or all of the diminution credits previously earned ... on the individual's term of confinement." As we explained in *Henderson*, how much time an inmate will actually have to serve after being returned to prison from release on mandatory supervision "will depend on the extent to which the good conduct credits earned during their previous incarceration (that led to their release) are forfeited, and what, if any, credit is given to them for 'street time'—the time they spent out of prison prior to their current infraction." *Henderson, supra,* 351 Md. at 441, 718 A.2d at 1152. If, as the State contends, a court, acting under § 642 or § 6–224(b), may direct execution of the previously unsuspended part of the sentence, it would necessarily usurp the function assigned to the Parole Commission to determine the extent to which the diminution credits that led to the release on mandatory supervision should be revoked.

Reading these three related statutes— §§ 6–224(b) and 6–218(b) of the Criminal Procedure Article and § 7–504(b) of the Correctional Services Article—together produces a

clear and harmonious result. When dealing with a split sentence, the court, in revoking probation, may direct execution of all or part of the previously suspended part of the sentence, but not of any part of the sentence that the court initially directed to be served in prison. That serves the triple purpose of (1) focusing the court on the part of the sentence that it had previously deferred execution of in favor of probation and not the part it had already directed to be served in prison, (2) allowing § 6–218(b) to operate by giving the defendant credit for all time that he/she served in prison under the sentence, and (3) permitting the Parole Commission to exercise its discretion under § 7–504(b) to determine the extent to which any diminution credits earned prior to the release on mandatory supervision should be revoked. Restricting the court's revisory authority to the previously suspended portion of the sentence also comports with what we said in *Maus v. State,* 311 Md. 85, 107, 532 A.2d 1066, 1077 (1987) and *State v. Dopkowski,* 325 Md. 671, 678, 602 A.2d 1185, 1189 (1992): The options available to a court upon declaring a violation of probation "vary from continuing the probation to reimposing the full remaining term *of a suspended sentence.*" (Emphasis added).

We conclude, therefore, that the court had no authority to direct execution of any part of the 18–month period that was previously unsuspended. We shall reverse the order denying appellant's motion to correct illegal sentence and remand the case for a new order in conformance with this Opinion.

ORDER DENYING MOTION TO CORRECT ILLEGAL SENTENCE REVERSED; CASE REMANDED TO CIRCUIT COURT FOR WASHINGTON COUNTY FOR ENTRY OF NEW ORDER IN CONFORMANCE WITH THIS OPINION; COSTS TO BE PAID BY WASHINGTON COUNTY.